1
2
3
4
5
6
7

JS - 6

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11 IN RE: ADAMSON APPAREL, )     Case No. CV 07-5160-VAP
   INC.                   )     USBC Case No. LA 04-30799-ER
12              DEBTOR,    )     Adv. No. LA 06-01953-ER
                          )
13 _____    )
   THE OFFICIAL COMMITTEE )
   OF UNSECURED CREDITORS )     **MEMORANDUM OPINION AND ORDER**
14 OF ADAMSON APPAREL,    )     **AFFIRMING THE BANKRUPTCY**
   INC.,                  )     **COURT'S DENIAL OF**
15                        )     **APPELLANT'S MOTION TO STRIKE**
                          )     **AND REVERSING THE GRANTING**
16            Appellant,  )     **OF SUMMARY JUDGMENT**
                          )
17      v.                )
                          )
18 ARNOLD H. SIMON,       )
                          )
19            Appellee.   )
                          )
20 _____    )

21      The Court has received and considered all papers

22 filed in support of Appellant The Official Committee of

23 Unsecured Creditors of Adamson Apparel, Inc.'s Appeal

24 from the United States Bankruptcy Court's denial of

25 Motion for Summary Judgment.  This matter is appropriate

26 for resolution without hearing.  See Fed. R. Civ. P. 78;

27 Local Rule 7-15.  For the reasons set forth below, the

28 Court affirms the Bankruptcy Court's denial of

Appellant's Motion to Strike, but reverses the Bankruptcy Court's granting of summary judgment.

## I. BACKGROUND

Appellant The Official Committee of Unsecured Creditors of Adamson Apparel, Inc. ("Appellant") appeals from an order of the United States Bankruptcy Court for the Central District of California denying its Motion for Summary Judgment.

### A.   Factual Background

On April 18, 2002, Adamson Apparel, Inc. ("Debtor") entered into various agreements by which The CIT Group/Commercial Services, Inc. ("CIT") became the Debtor's accounts receivable factor and the Debtor granted CIT a lien on all of its assets, including inventory and receivables, to secure both the purchase of the Debtor's inventory from a third-party as well as the Debtor's ongoing factoring relationship with CIT. [Appellant's Excerpt of Record ("EOR") at 2.]

Appellee Arnold H. Simon ("Simon"), a principal of the Debtor, guaranteed the Debtor's above-described obligations to CIT through the following guaranties:

(1) Limited Guaranty dated November 12, 2002 ("11/12/02 Guaranty") [Id. at 25-31];

2

1    (2) Limited Guaranty dated February 11, 2003

2    ("2/11/03 Guaranty") [Id. at 32-38];

3    (3) Amended and Restated Limited Guaranty dated April

4    9, 2003 ("4/9/03 Guaranty") [Id. at 39-46];

5    (4) Amended and Restated Cash Collateral Pledge

6    Agreement and Amendment to Guaranty dated April 25,

7    2003 ("4/25/03 Guaranty") [Id. at 47-57];

8    (5) Limited Guaranty dated August 5, 2003, as amended

9    and increased by a Letter Agreement dated December 2,

10   2003[1] ("8/5/03 Guaranty") [Id. at 58-64]

11 (collectively, the "Five Guaranties").

12

13    On September 28, 2004, Debtor filed a voluntary

14 petition under Chapter 11 of the Bankruptcy Code.   On

15 September 27, 2006, the Bankruptcy Court entered its

16 order authorizing Appellant to prosecute certain

17 litigation claims of Debtor's estate, including those

18 claims against Simon which are the subject of this

19 appeal.

20

21 **B.    Procedural Background**

22    On September 28, 2006, Appellant filed an adversary

23 complaint seeking to recover $4,989,934.65 as a

24 preference from Simon based on the Debtor directing a

25 $4,989,934.65 payment to CIT to pay off a debt that Simon

26

27    _____

28    [1]    The Letter Agreement dated December 2, 2003 was
not made a part of the Appellant's Excerpt of Record.

1   guaranteed.   [Id. at 1-4.]   On December 18, 2006, Simon

2   filed his Answer to the Complaint.   [Id. at 5-11.]   On

3   June 4, 2007, Simon filed a Motion for Summary Judgment

4   ("MSJ") alleging Simon was not a creditor because he had

5   waived his subrogation/indemnity claim against Debtor.

6   [Id. at 13-65.] Concurrently with the MSJ, Debtor filed a

7   Statement of Uncontroverted Facts and Conclusions of Law

8   in Support of the MSJ (the "Initial Statement of

9   Uncontroverted Facts").   [Id. at 66-69.]   On June 19,

10  2007, Appellant filed its Opposition to the MSJ, along

11  with its Statement of Genuine Issues.   [Id. at 70-78, 79-

12  84.]   On June 29, 2007, Simon filed a Reply in support of

13  its MSJ ("Reply").   [Id. at 85-93.]

14

15      On July 2, 2007, Appellant filed a Motion to Strike

16  the Reply for expanding the issues presented for

17  adjudication beyond those in the original MSJ, which

18  Simon opposed.   [Id. at 94-98, 99-104.]   Before the

19  hearing on the MSJ and the Motion to Strike, the court

20  issued a tentative ruling granting the MSJ and denying

21  the Motion to Strike.   [Id. at 111-114.]   At the hearing

22  on July 10, 2007, the court heard Simon's MSJ and

23  Appellant's Motion to Strike, and took the matter under

24  submission.   [Id. at 191:15-192:6.]   On July 12, 2007,

25  the Bankruptcy Court entered its Memorandum Decision

26  granting the MSJ and denying the Motion to Strike, and

27  incorporated by reference the court's prior tentative

28

4

1  ruling.   [Id. at 105-115.]   On July 27, 2007, the

2  Bankruptcy Court entered the (post-ruling) Statement of

3  Uncontroverted Facts and Conclusions of Law and a Summary

4  Judgment based thereon.   [Id. at 124-130; 136-140.]

5  Appellant's Notice of Appeal therefrom was filed on

6  August 3, 2007.   [Id. at 141-143.]

7

8      On December 5, 2007, Appellant filed its Opening

9  Brief ("Comm. Op. Br.").   On December 26, 2007, Simon

10  filed its Opening Brief ("Simon Br.").   On January 7,

11  2008, Appellant filed a Reply Brief ("Comm. Reply Br.").

12

13             **II. JURISDICTION AND STANDARD OF REVIEW**

14      The jurisdiction of a federal district court to

15  entertain an appeal from the Bankruptcy Court is governed

16  by 28 U.S.C. §158(a), which provides in pertinent part:

17  "The district courts of the United States shall have

18  jurisdiction to hear appeals . . . from final judgment,

19  orders, and decrees."

20

21      A Bankruptcy Court's ruling on a motion to strike is

22  entrusted to its sound discretion and is reviewed under

23  the abuse of discretion standard.   El Pollo Loco, Inc. v.

24  Hashim, 316 F.3d 1032, 1038 (9th Cir. 2003).   "Discretion

25  is abused when the judicial action is 'arbitrary,

26  fanciful or unreasonable' or 'where no reasonable man [or

27

28

woman] would take the view adopted by the trial court.'"
Id. at 1041 (citation omitted).

A Bankruptcy Court's decision whether or not to grant
a motion for summary judgment is reviewed under the de
novo standard.  Tobin v. San Souci Ltd. P'ship (In re
Tobin), 258 B.R. 199, 202 (9th Cir. BAP 2001).  Viewing
the evidence in the light most favorable to the
non-moving party, we must determine "whether there are
any genuine issues of material fact and whether the trial
court correctly applied relevant substantive law."  Id.
We may affirm an order granting summary judgment on any
ground that is supported by the record.  Simo v. Union of
Needletrades, Indus. & Textile Employees, 322 F.3d 602,
610 (9th Cir. 2003).

### III. DISCUSSION

Appellant raises the following four issues on appeal:
(1) Did the Bankruptcy Court err in granting summary
judgment on a theory that was not identified in Simon's
MSJ, but only in the Reply; (2) Did the Bankruptcy Court
err in declining either to strike that portion of the
Reply that argued a theory that was not originally
identified in the MSJ or to allow Appellant an
opportunity to file a supplemental memorandum addressing
that theory; (3) Did the Bankruptcy Court err in
determining that the waiver of subrogation/indemnity

claims in the 8/5/03 Guaranty effected a waiver of the partial subrogation/indemnity claim in the 4/25/03 Guaranty; and (4) Did the Bankruptcy Court err in holding that an indemnity waiver by an insider guarantor eliminates the insider's creditor status for preference liability purposes.   [Comm. Op. Br. at 1-2.]

As discussed above, the Bankruptcy Court granted Simon's MSJ and denied Appellant's Motion to Strike.   As discussed below, the Court affirms in part and reverses in part.   The Court finds no abuse of discretion in the Bankruptcy Court's denial of the Motion to Strike.   On de novo review of the Bankruptcy Court's grant of summary judgment, however, the Court reverses the Bankruptcy Court's determination that Simon was entitled to summary judgment.

**A.   The Bankruptcy Court Did Not Abuse its Discretion When it Denied Appellant's Motion to Strike**

Appellant based its Motion to Strike on its contention that Simon raised a new issue in his Reply, not previously included in his original moving papers. [Id. at 6.]   Specifically, Appellant argues that the Reply expanded the issues presented for adjudication when it argued that "any reservation of subrogation/indemnity rights by Simon in the 4/25/03 Guaranty was irrelevant because it was superseded by the waiver of

subrogation/indemnity rights in the 8/5/03 Guaranty."
[Id.]

Whether or not a reply raises new issues is analyzed
as part of the respondent's Motion to Strike.  Schneider
v. TRW, Inc., 938 F.2d 986, 989 (9th Cir. 1991).
Generally, the moving party is permitted to file a reply
brief to respond to points made in any opposition papers,
but cannot expand the issues beyond those in the moving
papers.  William W. Schwarzer et al., Federal Civil
Procedure Before Trial ¶ 14:96.1 (The Rutter Group 2007).
The Bankruptcy Court has the discretion to consider a
legal issue even if it is first raised in a reply brief,
however.  Glenn K. Jackson, Inc. v. Rowe, 273 F.3d 1192,
1202 (9th Cir. 2001).

Here, the Court finds that Simon's Reply does not
raise any new issues not previously addressed in the MSJ.
Simon's MSJ referred to, and included copies of, all five
of the guaranties that were issued.  [Id. at 16.]  The
MSJ also clearly stated that the 11/12/02, 2/11/03,
4/9/03 and the 8/5/03 guaranties each included
subrogation/indemnity waivers set forth in "Section 5,"
of each agreement.[2]  [Id. at 16, 22.]  Moreover, the MSJ
also highlighted that the fourth agreement, the 4/25/03

---

[2]  See discussion infra Part III.B for the language
of Section 5.

1  Guaranty, incorporated the terms of the other guaranties
2  in Section 10(b), and also included a provision at
3  Section 4(i), which had waiver language similar to that
4  of Section 5.³  [Id. at 16:21-23, 22:16-18.]
5
6      In opposition to the MSJ, Appellant claimed that the
7  4/25/03 Guaranty "at most deferred, but did not
8  irrevocably waive, [Simon's] rights of
9  subrogation/indemnity against Debtor . . . ." [Id. at
10  73:2-5.]   In its Reply, Simon disagreed with this
11  argument and pointed out that the 8/5/03 Guaranty, the
12  fifth and final agreement, had broad
13  indemnity/subrogation waiver language that superseded the
14  4/25/03 Guaranty.   [Id. at 87-88.]   Therefore, Simon's
15  Reply was merely responding to Appellant's argument
16  concerning the deferral language of the 4/25/03 Guaranty,
17  and does not expand any arguments or raise new issues.
18  The Bankruptcy Court so found, stating as follows:
19
20          The Court finds that Simon's Reply is
21          directly responsive to the issues raised in the
22          [Committee's] Opposition and does not raise new
23          arguments.
24  ///
25
26  _____
27      ³  Section 4(i) of the 4/25/03 Guaranty provides in
    pertinent part: "Pledgor waives: . . . (iii) any right of
28  subrogation or interest in the Obligations or the
    Collateral . . . ."

1    The motion to strike would have been

2    well-taken if the summary judgment motion had

3    failed to refer to the 8/5/03 guaranty at all.

4    However, the 8/5/03 and its purported waiver of

5    subrogation rights was set forth in the [MSJ].

6    The context of the 8/5/03 guarantee was expanded

7    in response to the Opposition; but it was not

8    new.

9    [Id. at 111.]

10

11   Furthermore, there was no abuse of discretion here,

12   because the Bankruptcy Court's denial of the Motion to

13   Strike was not "arbitrary, fanciful or unreasonable."   El

14   Pollo Loco, 316 F.3d at 1041.   In fact, the Bankruptcy

15   Court permitted Appellant to argue points which it would

16   have included in a supplemental brief [EOR at 173-177,

17   181-82], and took the matter under submission to

18   determine whether or not Appellant could have fairly

19   contemplated the arguments presented in Simon's Reply.

20   [Id. at 191:15-192:6.]   In its Memorandum Decision, the

21   Bankruptcy Court concluded that Appellant could have

22   contemplated the arguments in Simon's Reply, and "simply

23   ignore[d] the potential effect of the *later* 8/5/03

24   Guaranty which it concedes includes a comprehensive

25   waiver of such right." [Id. at 106 (emphasis in

26   original)].   The court went on to state that "[a]t a

27   minimum, [Appellant] could have addressed the seeming

28

10

1  inconsistencies between [the 4/25/03 and the 8/5/03]
2  guaranties and/or could have raised any arguments based
3  on ambiguities or section 11(e) of the 8/5/03 Guaranty at
4  that time . . . [but] chose not to do so." [Id. at 106-
5  07.]

6

7      Accordingly, because the Bankruptcy Court "listened
8  to, considered, and rejected" Appellant's arguments, no
9  abuse of discretion occurred. El Pollo Loco, 316 F.3d at
10 1041. The Court denies the appeal insofar as it
11 challenges the Bankruptcy Court's denial of the Motion to
12 Strike.

13

14 **B.  The Bankruptcy Court Erred in Granting Summary**
15 **Judgment**
16     In determining whether Simon is liable for a
17 preferential transfer, the Court examines whether the
18 elements of a preference claim have been met. The
19 elements of a preference claim under 11 U.S.C. § 547 are:

20

21          (b) Except as provided in subsection (c) of this
22          section, the trustee may avoid any transfer of
23          an interest of the debtor in property --
24              (1) to or for the benefit of a creditor;
25              (2) for or on account of an antecedent debt
26              owed by the debtor before such transfer was
27              made;

28

1    (3) made while the debtor was insolvent;

2    (4) made --

3         (A) on or within 90 days before the date

4         of the filing of the petition; or

5         (B) between ninety days and one year

6         before the date of the filing of the

7         petition, if such creditor at the time

8         of such transfer was an insider; and

9    (5) that enables such creditor to receive

10        more than such creditor would receive if --

11             (A) the case were a case under chapter 7

12             of this title;

13             (B) the transfer had not been made; and

14             (C) such creditor received payment of

15             such debt to the extent provided by the

16             provisions of this title.

17   11 U.S.C. § 547(b).

18

19       As stated by the Bankruptcy Court, the factual

20   dispute here is whether Simon is a creditor of the

21   Debtor.   The resolution of this question turns on whether

22   Simon waived his right of subrogation/indemnity against

23   the Debtor as an insider guarantor of Debtor's

24   obligations to CIT.

25

26       Appellant argues that the Bankruptcy Court erred in

27   finding that the waiver in the 8/5/03 Guaranty superseded

28

the reservation of a partial subrogation/indemnity claim
in the 4/25/03 Guaranty.   [Comm. Op. Br. at 9.]
Appellant cites the language in paragraph 7(c) of the
4/25/03 Guaranty in which it appears that Simon deferred
his subrogation/indemnity claims against Debtor:

> (c) Unless and until Pledgee [i.e., CIT] shall
> have received final payment and satisfaction in
> full of all of the Obligations and the financing
> arrangements of Client with Pledgee have been
> terminated, (i) Pledgor [i.e., Defendant] hereby
> irrevocably and unconditionally defers all
> statutory, contractual, common law, equitable
> and all other claims against Client, any
> collateral for the Obligations or Client
> Obligations or other assets of Client or any
> other Obligor, for subrogation, reimbursement,
> exoneration, contribution, indemnification,
> setoff or other recourse in respect to sums paid
> or payable to Pledgee by Pledgor hereunder and
> (ii) Pledgor shall not seek payment of any
> claims described in clause (i) of this Section
> 7(c) or take any action to collect any such
> payments and any such payments which may be
> received by Pledgor shall be promptly delivered
> to Pledgee.   Notwithstanding anything to the
> contrary in the previous sentence, Pledgor shall

13

1                be permitted to file a proof of claim or other

proof of debt in the form required in connection

with any dissolution, winding-up, liquidation or

reorganization of Client or any Obligor in any

bankruptcy, insolvency or receivership

proceedings with respect to Client or any

Obligor.

[Id. (emphasis in original); see also EOR at 38.]

Initially, the Bankruptcy Court agreed with Appellant and found that paragraph 7(c) did not appear to constitute a waiver.  Specifically, the Bankruptcy Court stated in its tentative ruling as follows:

The Committee cites language of the 4/25/03 Guaranty at paragraph 7(c) in which Simon purportedly "defers" his claims against Debtor for subrogation, reimbursement or indemnification on account of monies paid by him to CIT, until CIT is paid in full and Debtor's financing arrangements with CIT have been terminated.  This paragraph also provides that "[n]otwithstanding anything to the contrary in the previous sentence," Simon is permitted to file a proof of claim in connection with any bankruptcy, insolvency or receivership proceedings with respect to Debtor.  The

14

1        "previous sentence" referred to is that one
2        discussing the deferment of any reimbursement
3        claims; therefore, it appears that the proof of
4        claim could be based on reimbursement.    In
5        short, the foregoing language does not appear to
6        be "waiver" language.
7    [EOR at 112.]

8

9    The Bankruptcy Court ultimately found that the
10   deferral language in the 4/25/03 Guaranty was superseded
11   by Section 5 of the subsequently executed 8/5/03
12   Guaranty.   Specifically, Section 5 provides as follows:

13

14       SECTION 5.   Subrogation.   The Guarantor hereby
15       irrevocably waives and agrees he will not
16       exercise any and all rights which he has or may
17       have at any time or from time to time (whether
18       arising directly or indirectly by operation of
19       law or contract) to assert any claim against
20       Adamson or any other party on account of any
21       payments made under this Guaranty or otherwise,
22       including, without limitation, any and all
23       existing and future rights of subrogation,
24       reimbursement, exoneration, contribution and/or
25       indemnity.   If any amount shall be paid to the
26       Guarantor on account of such subrogation rights
27       at any time when all of the Obligations and all

28

1          other expenses payable hereunder shall not have
2          been paid in full, such amount shall be held in
3          trust for the benefit of CIT, shall be
4          segregated from the other funds of the Guarantor
5          and shall forthwith be paid over to CIT to be
6          applied in whole or in part by CIT against the
7          Obligations, whether matured or unmatured, and
8          all such other expenses in accordance with the
9          terms of the Financing Agreements and this
10         Guaranty.
11    [Id. at 46.]
12
13         Appellant argues that a triable issue of fact exists
14    because there is an apparent conflict between the
15    standard language of Section 5 and the language of
16    Section 7(c) of the 4/25/03 Guaranty.   [Comm. Op. Br. at
17    10.]   Appellant further argues that Section 5, however,
18    does not stand alone, but that the 8/5/03 Guaranty also
19    includes Section 11(e) which provides as follows:
20
21         (e)   This Guaranty is in addition to, and not in
22         replacement, amendment or modification of, any
23         other guaranty of or collateral granted as
24         security for the Obligations or any other
25         liabilities and obligations owing to CIT by any
26         person, including, without limitation, each of
27         the following documents by Guarantor in favor of
28

16

1     CIT: that certain (i) Limited Guaranty dated as
2     of November 12, 2002, as amended, (ii) Amended
3     and Restated Cash Collateral Pledge Agreement,
4     dated as of April 25, 2003, and (iii) Amended
5     and Restated Limited Guaranty dated as of April
6     9, 2003, guaranteeing up to $1,000,000 of the
7     obligations of Adamson to CIT.
8  [EOR at 63.]
9
10    The Bankruptcy Court disagreed with Appellant and
11 ruled as follows:
12
13     [T]he Court finds that the waiver contained in
14     the 8/05/03 Guaranty expressly provides that
15     Simon irrevocably waives any and all "existing"
16     claims against Debtor for subrogation,
17     reimbursement and/or indemnification on account
18     of payments made "under this Guaranty or
19     otherwise."  Consequently, to the extent that
20     Simon may have had subrogation rights against
21     Debtor under the 4/25/03 Guaranty, he
22     subsequently waived them in the 8/5/03 Guaranty.
23     In sum, the 8/5/03 Guaranty does not "replace or
24     amend" paragraph 7(c) in the 4/25/03 Guaranty;
25     rather, when this right came into existence, it
26     was waived pursuant to the subsequent 8/5/03
27     Guaranty.
28

17

1   [Id. at 112.]   The Bankruptcy Court also found that
2   Section 11(e) was inapposite since it "refer[red] to the
3   obligations and security owing to CIT."   [Id. at 113.]
4
5       This Court finds there is a genuine issue of material
6   fact as to whether the 8/5/03 Guaranty superseded the
7   4/25/03 Guaranty, and accordingly, reverses the
8   Bankruptcy Court on this point.
9
10      It is undisputed that New York law applies under the
11  terms of the Five Guaranties.   [See, e.g., id. at 30; see
12  also id. at 81.]   Under New York law, a guaranty is
13  generally to be construed to give effect to the parties'
14  intentions.   Caldor, Inc. v. Mattel, Inc., 817 F. Supp.
15  404, 410 (S.D.N.Y. 1993).   "In interpreting a guaranty,
16  the court will consider the reasonable expectations of
17  the parties and the business purpose to be served by
18  their contract."   28 N.Y. Prac., Contract Law § 25:10
19  (2008).   Furthermore, New York Practice Series provides
20  as follows with regards to guaranty agreements:
21
22          A guaranty is to be construed to effectuate its
23          apparent purpose with any ambiguity therein to
24          be construed against the draftsman.   A court's
25          task in interpreting a commercial guaranty is to
26          determine the parties' intentions based upon the
27          language of the guaranty in light of custom and
28

1          practice in the industry.  Where the language of

2          a guaranty is unambiguous, no need exists to

3          resort to extrinsic evidence to interpret it and

4          effect must be given to the parties' intent as

5          indicated by the language itself.

6          . . . .

7          The obligations of the guarantor must be

8          strictly construed according to the terms of the

9          agreement and cannot be altered, extended or

10         enlarged by the creditor or the debtor without

11         the guarantor's consent.

12  Id.

13

14     Here, the Bankruptcy Court found that Section 5 of

15  the 8/5/03 Guaranty, by waiving "any and all 'existing'

16  claims against Debtor for subrogation, reimbursement

17  and/or indemnification on account of payments made 'under

18  this Guaranty or otherwise,'" meant that it superseded

19  the 4/25/03 Guaranty.  [EOR at 112.]  However, it is

20  well-settled under New York law that "'where the parties

21  have clearly expressed or manifested their intention that

22  a subsequent agreement supersede or substitute for an old

23  agreement, the subsequent agreement extinguishes the old

24  one . . . .'"  Lnzro Pizza Empire, Inc. v. Brown, 645

25  N.Y.S.2d 379, 380 (Sup. Ct. 1996) (citations omitted);

26  see also Globe Food Servs. Corp. v. Consol. Edison Co. of

27  N.Y., 584 N.Y.S.2d 820, 821 (Sup. Ct. 1992).

28

1    In this case, the parties have not clearly expressed
2  or manifested their intention that the 8/5/03 Guaranty
3  supersede the 4/25/03 Guaranty.  In <u>Globe Food</u>, the court
4  found that the provision of a subsequent contract that
5  read "this contract shall replace all prior agreements"
6  was not sufficient to supersede a prior agreement.
7  <u>Globe Food</u>, 584 N.Y.S.2d at 821.  The court held that
8  there needed to be more definitive language such as
9  "revocation and cancellation of the prior agreement,"
10 "supersedes any prior agreement," "in lieu of and shall
11 supersede any prior agreements."  <u>Id.</u> (quotations and
12 citations omitted).

13

14   Because the 8/5/03 Guaranty fails to state the
15 explicit language found in <u>Globe Food</u>, the Bankruptcy
16 Court erred in finding that it superseded the 4/25/03
17 agreement.  Indeed, the Bankruptcy Court failed to cite
18 any authority, other than referring to the contract
19 language, when it made its finding.  Moreover, definitive
20 language is used in the other guaranties when it is meant
21 to supersede or overwrite the previous guaranty.  For
22 example, the 4/9/03 Guaranty states in Section 12 as
23 follows:

24

25        (b) <u>Restatement</u>.  The terms, conditions,
26        agreements, covenants, representations and
27        warranties set forth in the Existing Guaranty
28

1    are hereby amended and restated in their

2    entirety, and as so amended and restated,

3    replaced and superseded, by the terms,

4    conditions, agreements, covenants,

5    representations and warranties set forth in this

6    Amended and Restated Limited Guaranty . . . .

7  [EOR at 44.]

8

9      As such, because the 8/5/03 Guaranty fails to state

10  definitive language superseding the 4/25/03 Guaranty,

11  there arises an issue of material fact as to the proper

12  interpretation of the Five Guaranties at issue and

13  whether Simon actually waived his subrogation/indemnity

14  claims.

15

16      Accordingly, the Bankruptcy Court improperly found

17  that there are no genuine issues of material fact for

18  trial.[4]

19

20                        **IV. CONCLUSION**

21      For the foregoing reasons, the Court affirms the

22  Bankruptcy Court's denial of Appellant's Motion to

23  Strike, but reverses the Bankruptcy Court's granting of

24  ///

25  _____

26      [4]  Because the case is remanded for the Bankruptcy
    Court to determine triable issues of fact, the Court
27  declines to address the issue of whether an insider
    guarantor's waiver of subrogation/indemnity against the
28  Debtor would preclude preference liability.

                                21

1  Simon's MSJ.  The case is remanded to the Bankruptcy
2  Court for further proceedings consistent with this
3  Memorandum Opinion.

4

5  **IT IS SO ORDERED.**

6

7  Dated:  __June 5, 2008__                    _____
                                              VIRGINIA A. PHILLIPS
8                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28